**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOHN MCDONALD,<br>    *Plaintiff*, | )<br>)<br>) |
| v. | )<br>) |
| ROBERT DERRY, ADAM<br>ROSENBERG, JACK GONCALVES,<br>BRIAN FOLEY, JAMES ROVELLA,<br>STAVROS MELLEKAS, and JASON ST.<br>JOHN,<br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. 3:24-CV-01859 (KAD)

March 24, 2026

**MEMORANDUM OF DECISION**
**RE: MOTIONS TO DISMISS (ECF Nos. 80, 81)**

Kari A. Dooley, United States District Judge:

Plaintiff John McDonald ("Plaintiff" or "McDonald") commenced this civil rights action against Defendant Adam Rosenberg ("Rosenberg"), as well as against Robert Derry, Jack Goncalves, Brian Foley, James Rovella, Stavros Mellekas, and Jason St. John (collectively, the "State Defendants"). Plaintiff brings various state-law tort claims against the Defendants, as well as claims under 42 U.S.C. § 1983 for civil rights violations. The Defendants removed the action to federal court on November 25, 2024. Defendant Rosenberg and the State Defendants filed separate motions to dismiss, which Plaintiff opposes. For the reasons that follow, both motions to dismiss are GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

1

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations and Procedural History**

For the purposes of the motion to dismiss, the allegations in the Third Amended Complaint are accepted as true. *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

Plaintiff was a sergeant employed by the Connecticut State Police ("CSP"). TAC, ECF No. 75, ¶ 10. In or around September 2019, Plaintiff was arrested for driving under the influence after a CSP retirement party. *Id*. ¶ 14. Following his arrest, Plaintiff was suspended from active duty and assigned to an administrative role within the CSP. *Id*. ¶ 23. More specifically, he was assigned to facilitate the implementation of a new time management system called "Kronos." *Id*. ¶ 24. In January 2021, per the Plaintiff's request, Defendant Rosenberg, a sergeant with the CSP, was reassigned to the Kronos team. *Id*. ¶ 33. Near the end of March 2021, Plaintiff began a period of pre-approved paternity leave, during which time Rosenberg assumed full control of the Kronos project. *Id*. ¶ 34.

While on leave, Plaintiff received numerous calls and emails from CSP staff concerning the Kronos project, as Defendant Rosenberg failed to respond to multiple emails, calls, and texts. *Id*. ¶ 35. On or about May 25, 2021, Plaintiff learned from their vendor that a significant portion

of the program was ready to be launched, with this specific portion of the program having been preapproved before Rosenberg was assigned to the Kronos team. *Id.* ¶¶ 37–38. When Rosenberg learned of the vendor launch, he became upset and allegedly used profanity in a conversation with Plaintiff and a supervisor. *Id.* ¶ 41. Ten minutes after that confrontation, Plaintiff was informed by another supervisor that he was being temporarily removed from the Kronos team. *Id.* ¶ 43. Shortly thereafter, Plaintiff learned that his authority on the Kronos system had been downgraded to "Basic Staffer," which meant that he could not make edits within the system. *Id.* ¶ 44. This was a change that allegedly could only have been made by Rosenberg. *Id.* Plaintiff later learned that Rosenberg was removing fixes made to the system, which prompted Plaintiff to contact Rosenberg, to which there was no response. *Id.* ¶¶ 47–49. On May 27, 2021, Plaintiff spoke to a Kronos representative and was advised that Rosenberg altered system settings or added a hidden code, meaning the Plaintiff and numerous other employees would not be paid for their regular time. *Id.* ¶¶ 53–54. Because of this information, Plaintiff contacted Defendant Goncalves, a lieutenant colonel with the CSP, to tell him he wanted to file a complaint. *Id.* ¶ 56. Goncalves allegedly told Plaintiff not to file a complaint, which resulted in a heated argument. *Id.* ¶ 57. Despite Goncalves's directive, Plaintiff sent an email complaint to Defendant Mellekas (a colonel), pursuant to the terms of the collective bargaining agreement at the time. *Id.* ¶ 61. In that email, Plaintiff alleged that Rosenberg had committed a computer crime by altering data in the Kronos system. *Id.* ¶¶ 61–62. After making the complaint, Plaintiff met with Mellekas, where he was told that he would eventually be promoted, despite the internal investigation into his driving under the influence. *Id.* ¶ 65.

After this meeting, Plaintiff alleges that his work environment changed in several ways. He alleges that he was assigned to several positions but not given any formal assignments; that his

workstation was moved twice without reason; that he lost his electronic access and received no communication or assignments; and that he was denied his annual evaluation. *Id*. ¶¶ 66–71. On October 5, 2021, Plaintiff was advised by Defendant Derry that he was under investigation for computer crimes. *Id*. ¶ 74. Plaintiff believed at the time that Goncalves made the complaint based on false statements made by Rosenberg. *Id*. ¶ 75. Because of Plaintiff's previous charges for driving under the influence, an additional criminal investigation had serious implications for him, including potential incarceration. *Id*. ¶ 79. Plaintiff was then advised by representatives of his union, who had been in discussion with the CSP, that all prosecutions would be stopped if he voluntarily resigned. *Id*. ¶ 81. Thus, "under significant duress," Plaintiff resigned from the CSP on October 25, 2021. *Id*. ¶¶ 82–83. Despite their purported promise, the CSP, namely Derry, prepared an arrest warrant application for Plaintiff and forwarded it to the State's Attorney Office. *Id*. ¶ 87. The State's Attorney Office declined to prosecute the case. *Id*. ¶ 90.

After resigning, Plaintiff was contacted by Defendant St. John, a sergeant in the CSP's Professional Standards unit, as part of an internal affairs investigation. *Id*. ¶ 93. When asked to come for an in-person interview, Plaintiff declined and indicated that he would cooperate through answering written questions, a process which was set forth in the CSP's collective bargaining agreement. *Id*. ¶¶ 94–96. Plaintiff's request was denied, and St. John submitted a report alleging that the Plaintiff refused to cooperate in the investigation. *Id*. ¶ 102.

In March 2023, Plaintiff received notice from the Police Officer Standards and Training Council (POSTC), the licensing board for police officers in Connecticut, that a decertification request had been sent to them by the CSP due to the investigations into driving under the influence and "computer crimes." *Id*. ¶¶ 105–06. Plaintiff voluntarily surrendered his certification "due solely to the DUI issue." *Id*. ¶ 108. The decertification was eventually made public and appeared

4

in the media. *Id.* ¶ 110. At that point, Plaintiff had a new job as the assistant director of the Law School Admissions Office at Western New England University ("Western New England"). *Id.* ¶ 111. Due to the negative publicity, Western New England asked Plaintiff to resign. *Id.* ¶ 112. Plaintiff reluctantly did so. *Id.* ¶ 113.

Plaintiff originally filed the Complaint in Connecticut Superior Court on November 8, 2024,[1] and Defendant timely removed the action to federal court on November 25, 2024. The operative complaint, the Third Amended Complaint (TAC), was filed on June 30, 2025. TAC, ECF No. 75. As against Rosenberg, Plaintiff asserts seven causes of action: abuse of process (Count 1); malicious prosecution (Count 2); violations of 42 U.S.C. § 1983 (Count 5); constructive fraud (Count 10); defamation (Count 11); intentional infliction of emotional distress (IIED) (Count 13); and negligent infliction of emotional distress (NIED) (Count 14). Defendant Rosenberg has moved to dismiss all counts against him. Def. Rosenberg Mem. of Law, ECF No. 80, at 2. Plaintiff opposes the motion. Pl.'s Rosenberg Opp'n, ECF No. 87.

As against the State Defendants, Plaintiff asserts the following causes of action:

- Robert Derry: Abuse of process (Count 1); malicious prosecution (Count 2); violations of § 1983 (Count 3); constructive fraud (Count 10); defamation (Count 11); IIED (Count 13); NIED (Count 14); and negligence (Count 15).

- Jack Goncalves: Abuse of process (Count 1); malicious prosecution (Count 2); violations of § 1983 (Count 4); constructive fraud (Count 10); defamation (Count 11); IIED (Count 13); NIED (Count 14); and negligence (Count 15).

- Brian Foley: Violations of § 1983 (Count 7); constructive fraud (Count 10); IIED (Count 13); NIED (Count 14); and negligence (Count 15).

---

[1] *See McDonald v. State of Conn. Dep't of Emergency Servs. et al*, Dkt. No. MMX-CV-24-6043362-S (Conn. Super. Ct.).

- James Rovella: Violations of § 1983 (Count 8); constructive fraud (Count 10); fraud (Count 12); IIED (Count 13); NIED (Count 14); and negligence (Count 15).

- Stavros Mellekas: Abuse of process (Count 1); malicious prosecution (Count 2); violations of § 1983 (Count 6); constructive fraud (Count 10); fraud (Count 12); IIED (Count 13); NIED (Count 14); and negligence (Count 15).

- Jason St. John: Violations of § 1983 (Count 6); constructive fraud (Count 10); defamation (Count 11); IIED (Count 13); NIED (Count 14); and negligence (Count 15).

The State Defendants moved to dismiss all counts against them. State Defs.' Mem. of Law, ECF No. 81-1. Plaintiff also opposes the State Defendants' motion to dismiss. Pl.'s State Opp'n, ECF No. 88.

**Discussion**

**Defendant Rosenberg's Motion to Dismiss**

As an initial matter, in his opposition to Defendant Rosenberg's motion to dismiss, Plaintiff does not challenge the reasons for dismissal as to the following claims: Abuse of Process (Count 1); defamation (Count 11); and negligent infliction of emotional distress (Count 14). Pl.'s Rosenberg Opp'n at 10. Indeed, Plaintiff did not brief these claims in his opposition. With this explicit abandonment of these claims, the motion to dismiss Counts 1, 11, and 14 as against Defendant Rosenberg is GRANTED.

The only remaining claims against Defendant Rosenberg are therefore malicious prosecution (Count 2); violations of 42 U.S.C. § 1983 (Count 5); constructive fraud (Count 10); and (IIED) (Count 13). In broad strokes, Plaintiff alleges that "[t]he violations of [his] statutory,

6

common law, and constitutional rights initiated with the retaliatory false claims made by defendant Rosenberg." *Id.* at 9.  Plaintiff contends that statements allegedly made by Rosenberg—mainly, his false reports about Plaintiff's alleged misuse of the Kronos system—were made with the clear intent of causing him harm and provide the basis for each of his asserted claims against Rosenberg. *See id.*; TAC ¶¶ 74–75, 77.  Defendant Rosenberg moves to dismiss all claims against him on the grounds that they are barred by the statute of limitations, and in the alternative, on the grounds that Plaintiff cannot state a nonconclusory claim against him.  *See* Def. Rosenberg Mem. of Law at 6.

"While a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion where the dates in a complaint show that an action is barred by a statute of limitations." *Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007) (quotation marks, alterations, and citation omitted); *see also Royal v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Ret. Plan*, No. 20-4184, 2021 WL 4484925, at *1 (2d Cir. Oct. 1, 2021) (summary order) ("A defendant may raise the affirmative defense that a claim is barred by the statute of limitations in a motion to dismiss if that defense is apparent from the face of the complaint.").  "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

Under Connecticut law, the statute of limitations for tort claims is three years running from "the date of the act or omission complained of."  Conn. Gen. Stat. § 52-577.  Section 52-577 governs Plaintiff's claims of malicious prosecution, constructive fraud, and IIED.  For § 1983 claims, courts look to state law to determine the applicable statute of limitations.  *Weinberg v.*

*Dep't of Revenue, Servs.*, 596 F. Supp. 3d 386, 404 (D. Conn. 2022).  Thus, the applicable statute of limitations for § 1983 claims is three years as well.  *Id.*; *see also Gagain v. Scirpo*, No. 3:09-CV-571 (CSH), 2013 WL 6839466, at *6 (D. Conn. Dec. 27, 2013) ("The general three-year personal-injury statute of limitations period set forth in [section 52-577] has been uniformly found to be the appropriate one for federal civil rights actions." (quotation omitted)).  Although courts look to state law to determine the applicable statute of limitations, they must look to federal law to determine when a federal claim accrues.  *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("In a federal question case . . . when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues.").  A federal cause of action accrues "when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (quotation omitted).

There are few dates identified in the TAC as corresponding to the events alleged.  But, as relevant here, Plaintiff alleges that at the end of March 2021, he began paternity leave, at which point, Rosenberg assumed full control of the Kronos system.  TAC ¶ 34.  On or around May 25, 2021, Plaintiff and Rosenberg got into an argument about the Kronos project, which led to Rosenberg's alleged tampering of the system to lock Plaintiff out of the Kronos system.  *Id.* ¶¶ 37–47.  After Plaintiff complained to Rosenberg, Rosenberg allegedly contacted Goncalves and asked him to tell Plaintiff "not to send any more emails." *Id.* ¶¶ 48–51.  Two days later, on May 27, 2021, Plaintiff noticed that his hours had been designated as "unallocated time" and identified Rosenberg as the editor.  *Id.* ¶¶ 53–54, 56.  The next date specified in the TAC is October 5, 2021, when Plaintiff was "advised by Lt. Derry that he was under investigation for computer crimes and

that the complaint had been made against him by someone 'much higher' in the CSP than him." *Id.* ¶ 74. The TAC alleges that the complaint "had been made by Lt. Colonel Goncalves based on false statements from Sergeant Rosenberg." *Id.* ¶ 75.

Both parties agree that the action that triggered the running of the statute of limitations was Rosenberg's complaint to Lt. Goncalves, which ultimately led to Plaintiff being investigated and his resignation.[2] However, each party has a different theory as to which date should be used—the date of Rosenberg's false claim or Plaintiff's resignation. Defendant Rosenberg contends that October 5, 2021, is the proper date because that is the day Plaintiff, admittedly, learned he was under investigation based on Rosenberg's complaint. Rosenberg's Reply, ECF No. 89, at 2; *see* TAC ¶¶ 74–75. Plaintiff contends that since the investigation was still being pursued on October 25, 2021, and the basis for the investigation was Rosenberg's complaint, the continuing course of conduct doctrine[3] should toll the date that triggers the statute of limitations to October 25, 2021. Pl.'s Rosenberg Opp'n at 12.[4] Because Rosenberg was served in state court on October 25, 2024, *id.*, if the continuing course of conduct doctrine applies, then Plaintiff's claims against Rosenberg would be timely.

---

[2] Regarding the state law claims asserted against Rosenberg, section 52-577 provides that the three-year statute of limitations runs from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. Section 52-577 is therefore an "occurrence statute," such that the statute of limitations "begins to run the moment the act, injury and/or omission complained of occurs." *Fenn v. Yale Univ.*, 283 F. Supp. 2d 615, 636 (D. Conn. 2003) (Droney, J.). Plaintiff, in his opposition to the motion to dismiss, only argues for an accrual date of October 25, 2021, based on the continuing course of conduct doctrine, which the Court addresses herein. Plaintiff does not identify any alternative accrual dates for any of his federal or state claims, or the bases for such dates.

[3] For § 1983 claims, courts borrow "not only a state's limitations period but also its tolling rules." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quotation omitted). Thus, the Court analyzes the applicability of the continuing course of conduct doctrine to all of Plaintiff's claims.

[4] Plaintiff does not invoke an argument for equitable tolling more generally in his opposition, and thus, the Court does not consider whether Plaintiff's claims would be eligible for equitable tolling. *See Donoghue v. Am. Skiing Co.*, 155 F. Supp. 2d 70, 76 (S.D.N.Y. 2001) ("[P]laintiff has failed to plea with particularity—in fact, has failed to plead at all—the requirements for invoking equitable tolling."). And because equitable tolling applies "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action," *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014), it does not appear—and indeed, Plaintiff does not argue—that he could meet that high bar.

9

Plaintiff misapprehends the continuing course of conduct doctrine. Connecticut law permits tolling of the statute of limitations for some circumstances under the continuous course of conduct doctrine. *See Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 432–35 (2013). Under Connecticut's continuing course of conduct doctrine, "[w]hen the wrong sued upon consists of a continuing course of conduct," the relevant statute of limitations or repose "does not begin to run until that course of conduct is completed." *Khan v. Yale Univ.*, 85 F.4th 86, 100 (2d Cir. 2023) (quoting *Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286, 311 (2014)). Connecticut courts recognize that in certain instances "it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct"—specifically, where "[t]he injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events." *Watts v. Chittenden*, 301 Conn. 575, 587–88 (2011) (quotation omitted). A plaintiff may properly invoke the doctrine upon a showing that "the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Flannery*, 312 Conn. at 313 (quotation marks omitted). At the second step, "a finding that a duty continued to exist after the cessation of the act or omission relied upon" must be established by "evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Id.* at 312 (quoting *Watts*, 301 Conn. at 584).

Here, Plaintiff does not allege that there was a "special relationship" between him and Rosenberg.[5] He simply argues, without analysis, that the continuing course of conduct doctrine

_____

[5] Moreover, under Connecticut law, mere coworkers—in the absence of some other contractual, fiduciary, or confidential relationship—do not have such a special relationship. *See Dickman v. Conderino*, No. HHD-CV-11-5035909-S, 2015 WL 3798080, at *4 (Conn. Super. Ct. May 26, 2015) (holding that "no special relationship between

should apply because the investigation against Plaintiff—which was precipitated by Rosenberg's complaint—was ongoing when he resigned on October 25, 2021. Pl.'s Rosenberg Opp'n at 12. The Court interprets this argument as asserting the second basis for invoking the continuing course of conduct doctrine—"some later wrongful conduct of a defendant related to the prior act." But there are simply no allegations that Rosenberg was involved in the investigation into Plaintiff after the initial complaint, which Plaintiff knew about no later than October 5, 2021. Indeed, the very last allegation as to any conduct by Rosenberg in the TAC occurred on October 5, 2021, when Plaintiff apparently learned that Rosenberg made the purportedly false report against him. Connecticut courts have urged, in applying the continuing course of conduct doctrine, that it "cannot be invoked in a situation that merely or solely involves an initial wrong that continues unabated or uncorrected until it reaches and harms a victim." *Bucci v. City of Bridgeport*, 227 Conn. App. 593, 616 (2024), *cert. denied*, 350 Conn. 916 (2024). Plaintiff's allegations against Rosenberg fit squarely within the bounds of an initial wrong that later continued unabated or uncorrected. As a result, Plaintiff cannot sustain his burden to plausibly demonstrate a continuing course of conduct that would make his claims against Rosenberg timely. *See Khan*, 85 F.4th at 101–02. And because Plaintiff clearly knew (or had reason to know) that Rosenberg had allegedly made false accusations against him on October 5, 2021, Plaintiff's claims are time-barred.

Defendant Rosenberg's motion to dismiss Counts 2, 5, 10, and 13 is therefore granted, with prejudice. *See Network Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp. 3d 610, 625 (S.D.N.Y. 2025) ("Where the complaint clearly shows the claim is out of time, it should be dismissed with prejudice." (quotations omitted)).

---

the plaintiff and the defendant as co-workers that would give rise to a continuing duty that would toll the statute of limitations.").

**State Defendants' Motion to Dismiss**

In his opposition to the State Defendants' motion to dismiss, Plaintiff explicitly agrees that the following claims should be dismissed: fraud (Count 12) against all of the State Defendants; any § 1983 claims brought against the State Defendants in their official capacity; any claims purporting to assert a violation of Plaintiff's privacy rights; and any claims under the Connecticut Constitution. *See* State Defs.' Reply, ECF No. 90, at 1. Thus, the motion to dismiss Count 12 against all Defendants is GRANTED. Further, the motion to dismiss Plaintiff's § 1983 claims brought against the Defendants in their official capacity is GRANTED, and any claims brought under the Connecticut Constitution or asserting a violation of Plaintiff's privacy rights are DISMISSED. These dismissals are with prejudice.

The only remaining federal claims against the State Defendants are those brought under § 1983 for violations of his constitutional rights. Under § 1983, Plaintiff asserts violations of (1) his procedural due process rights under the Fourteenth Amendment; (2) his substantive due process rights under the Fourteenth Amendment; and (3) his First Amendment right to be free from retaliation for exercising his rights thereunder. The State Defendants move to dismiss these claims for failure to state a claim under Rule 12(b)(6), or, in the alternative, on the grounds that they are entitled to qualified immunity.[6] Plaintiff opposes the motion.

"Section 1983 gives a cause of action to any person who has been deprived of his constitutional rights, privileges or immunities under color of state law." *Powell v. Workmen's Comp. Bd. of State of N.Y.*, 327 F.2d 131, 135 (2d Cir. 1964). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

---

[6] As explained below, because the Court finds that Plaintiff has failed to state a claim under § 1983 for any violation of his constitutional rights, the Court need not and does not decide whether the State Defendants are entitled to qualified immunity.

conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1979) (citing *Baker v. McCollan*, 443 U.S. 137, 144 & n.3 (1979)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### *Procedural Due Process*

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. To allege a violation of procedural due process, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." *Loc. 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Accordingly, a procedural due process claim has two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).

Plaintiff alleges that the State Defendants deprived Plaintiff of his procedural due process rights by approving and/or initiating an investigation into him (Defendants Derry, Goncalves, Mellekas, and Rovella), by publishing "false and unsubstantiated statements" to the public about him (Defendant Foley), and by refusing to allow Plaintiff to provide written responses during the investigation and accusing him of being dishonest (Defendant St. John). TAC ¶¶ 117, 121–24. The State Defendants argue that Plaintiff cannot make out a procedural due process claim because he has not sufficiently alleged the deprivation of a liberty or property interest. State Defs.' Mem. of Law at 11. Although it is unclear in the TAC under what legal theory Plaintiff is asserting his procedural due process claim, in his opposition to the motion to dismiss, Plaintiff argues that he

13

has successfully asserted a "stigma-plus" claim under the Due Process Clause.  The Court agrees with the State Defendants that Plaintiff has failed to assert a procedural due process claim, under the stigma-plus theory or otherwise.

"Under 'limited circumstances,' government employees may have a cause of action for defamation in the course of, or in connection with, dismissal from government employment," through a stigma-plus claim under the Due Process Clause.  *Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019) (quoting *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010)).  "'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).  To succeed on a stigma-plus claim, "a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Vega*, 596 F.3d at 81 (quotation omitted).  "The relevant state-imposed burden must be separate from the stigmatizing statement and may take the form of a 'deprivation of a plaintiff's property' or the 'termination of a plaintiff's government employment.'"  *Mudge*, 939 F.3d at 80 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)); *see also Sadallah*, 383 F.3d at 38 ("However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994))).  Further, "[w]hile there is no rigid requirement that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time, they must be sufficiently proximate."  *Mudge*, 939 F.3d at 80 (alteration and quotation omitted).

14

First, the Plaintiff does not sufficiently allege the presence of the "plus" element for a stigma-plus claim, that is, the deprivation of a property interest. Plaintiff was not terminated from his job as a Connecticut state police officer—he voluntarily resigned. TAC ¶ 83. Although courts that have addressed this issue have acknowledged that there is "uncertainty" as to "whether an employee can claim he was deprived of pre-termination due process when the employee resigns," *see Parrish v. City of Wilmington*, 3 F. Supp. 3d 688, 694 (S.D. Ohio 2014), in general, voluntary resignation, however reluctant, does not rise to the level of a constitutional deprivation of a property interest, as a court in this District has recently found. *See Gopal v. Univ. of Conn.*, No. 3:19-CV-1810 (OAW), 2025 WL 969557, at *22 (D. Conn. Mar. 31, 2025); *see also Giglio v. Dunn*, 732 F.2d 1133, 1134 (2d Cir. 1984) (noting that voluntary resignation is a "much-used, face-saving device designed to avoid the stigma of being fired"). Plaintiff's threadbare allegations,[7] which boil down to being given the choice between resignation and termination, *see* TAC ¶¶ 81–83, similarly do not rise to the level of a constitutional deprivation. *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (finding that a voluntary resignation, "even where the only alternative is facing possible termination for cause or criminal charges," does not meet the standard for a constitutional deprivation of property under the Due Process Clause); *see also Giglio*, 732 F.2d at 1134–35 (holding that where a government employee was informed that he would be terminated unless he resigned, and thereafter voluntarily resigned, there was no procedural due process violation); *accord Gopal*, 2025 WL 969557, at *22.

---

[7] Notably, Plaintiff's opposition does not address this argument or the complex law on stigma-plus claims *at all*. *See* Pl.'s State Opp'n at 15–16. In this section of his brief, Plaintiff cites only three cases, none of which discuss the specific question of whether a voluntary resignation constitutes a deprivation of a property interest. Plaintiff simply and blithely asserts in a conclusory manner that the Plaintiff has "met [his] burden." *Id.* at 15. Although Plaintiff does argue that the record is insufficient at this stage and that this question is more properly answered at summary judgment, *id.*, he does not cite any case law for that proposition, nor does he explain why the Court cannot decide whether Plaintiff's voluntary resignation, which is not in factual dispute, constituted a property deprivation under the law.

Plaintiff was also advised about whether to resign by his union representatives, who had "been in discussions with CSP."  TAC ¶ 81.  As the court in *Gopal* found in similar circumstances, where a plaintiff is counseled by his union representative to resign and he voluntarily does so, he has not successfully alleged a procedural due process violation.  *See* 2025 WL 969557, at \*22 (noting that "[r]esignations are presumed voluntary unless (a) forced by coercion or distress or (b) obtained by deception or fraud" (quoting *Hargray*, 57 F.3d at 1568)).

Plaintiff's argument that his later termination from Western New England University because of the decertification and resignation coming to light, *see* TAC ¶¶ 106–13, constitutes a deprivation of a liberty or property interest is also unsuccessful.  For one, Plaintiff also voluntarily resigned from Western New England as an admittedly face-saving measure, *see id.* ¶ 113, and thus, the same reasoning above also applies to Plaintiff's resignation from Western New England. Furthermore, Western New England is not a government actor, and to assert a stigma-plus claim, "both the 'stigma' and the 'plus' must come from state action."  *Cutie v. Sheehan*, 645 F. App'x 93, 96 (2d Cir. 2016) (summary order) (citing *Sadallah*, 383 F.3d at 37–38).  Thus, Plaintiff resignation from Western New England cannot form the basis for a stigma-plus claim.

Accordingly, the motion to dismiss Plaintiff's procedural due process claims against the State Defendants is GRANTED.

### *Substantive Due Process*

The Substantive Due Process Clause of the Fourteenth Amendment protects "the right to be free of arbitrary government action that infringes a protected right."  *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6 (2d Cir. 2005) (emphasis omitted).  Further, a plaintiff must demonstrate that the state action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431

16

(2d Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Thus, "[i]n order to sustain a substantive due process claim, a plaintiff must demonstrate, *inter alia*, that he was deprived of a fundamental constitutional right by government action that is arbitrary or 'conscience-shocking.'" *Walker v. City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010) (summary order) (citation and quotation omitted).

Plaintiff alleges that the State Defendants violated his substantive due process rights by approving and/or initiating an investigation into him (Defendants Derry and Foley), by publishing false statements to the public about him (Defendant Foley), and by impairing his work environment by providing no work assignments to him, taking away his office, providing no direction, taking away electronic access, and denying an annual evaluation (Defendants Goncalves, Mellekas, and Rovella). TAC ¶¶ 119, 122–25. The State Defendants move to dismiss Plaintiff's substantive due claims on the grounds that employment rights are not protected by the Fourteenth Amendment. The Court agrees with the State Defendants.

"[T]he Supreme Court has 'narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution.'" *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) (summary order) (quoting *Hu v. City of New York*, 927 F.3d 81, 103 (2d Cir. 2019)). Thus, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotations omitted)). Thus, to the extent that Plaintiff asserts a substantive due process violation based on the initiation of a criminal investigation into him based upon false information, *see* TAC ¶¶ 123, 125, those claims are

17

properly brought under the more specific Fourth Amendment and not the Fourteenth Amendment. *See Bryant v. City of New York*, 404 F.3d 128, 135–36 (2d Cir. 2005).

In addition, numerous courts have found that "rights related to employment are not fundamental constitutional rights protected by substantive due process." *Mudge v. Zugalla*, No. 1:13-CV-891, 2014 WL 2453353, at \*6 (N.D.N.Y. June 2, 2014) (collecting cases); *Walker*, 361 F. App'x at 165 ("Generally, interests related to employment are not protected" by the Due Process Clause); *see Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979) (holding that a tenured teacher's termination from a public school does not violate her substantive due process rights). Furthermore, the workplace changes that Plaintiff allegedly suffered—taking away his office and electronic access, providing no work assignments, and not providing an annual evaluation—while perhaps distressing and even inappropriate if ill-intentioned, do not rise to the level of "shocking the conscience." *See Walker v. City of Waterbury*, 601 F. Supp. 2d 420, 424 (D. Conn. 2009) ("The Second Circuit has . . . held that 'improper actions taken by employers' do not violate substantive due process 'simply because that employer is a government official.'" (quoting *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986))), *aff'd*, 361 F. App'x 163 (2d Cir. 2010); *Linardos v. Juthani*, No. 3:24-CV-962 (VAB), 2025 WL 887693, at \*12 (D. Conn. Mar. 21, 2025) ("[T]he Second Circuit has instructed that the substantive due process component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." (quotation omitted)).

Therefore, the motion to dismiss Plaintiff's substantive due process claims against the State Defendants is GRANTED.

### *First Amendment Retaliation*

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quotation omitted). In order to state a First Amendment retaliation claim, Plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quotation omitted).

"When asserting a First Amendment retaliation claim, public employees . . . face greater burdens than private citizens to demonstrate that their speech is protected by the First Amendment, because '[t]he government as employer . . . has far broader powers [to restrict speech] than does the government as sovereign." *Long v. Byrne*, 146 F.4th 282, 291 (2d Cir. 2025) (brackets in original) (quoting *Garcetti v. Cabellos*, 547 U.S. 410, 418 (2006)). "That said, 'a citizen who works for the government is nonetheless a citizen,'" *id.* (quoting *Garcetti*, 547 U.S. at 419), and thus, the Supreme Court developed a test in *Garcetti v. Cabellos*, 547 U.S. 410 (2006), to determine whether a government employee's speech is protected by the First Amendment. *See also Lipkin v. George*, No. 3:23-CV-127 (KAD), 2024 WL 1119958, at *2–3 (D. Conn. Mar. 14, 2024) (discussing *Garcetti*). "To demonstrate that her speech or conduct is protected by the First Amendment, a public employee must first establish that she was 'speaking as [a] citizen[] about matters of public concern.'" *Long*, 146 F.4th at 291 (brackets in original) (quoting *Garcetti*, 547 U.S. at 419). That inquiry "in turn encompasses two separate subquestions: (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke as a citizen rather than solely as an employee." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotation marks omitted).

19

Plaintiff's First Amendment retaliation claim is based on the reports he made about Rosenberg regarding the Kronos system—both the informal concerns that he raised and the formal complaint that he eventually filed. *See* Pl.'s State Opp'n at 18. Plaintiff argues that he has plausibly alleged that he was speaking on a matter of public concern, *see id.*, and the State Defendants do not disagree, *see* State Defs.' Mem. of Law at 16–17. However, the State Defendants argue that Plaintiff has failed to establish, as he must under *Garcetti*, that he was speaking as a citizen "rather than solely as an employee." *Id.* at 17; *Matthews*, 779 F.3d at 172. The Court agrees with the State Defendants.

"For a public employee to demonstrate that she spoke as a citizen, she must establish that her speech fell 'outside of [her] official responsibilities.'" *Long*, 146 F.4th at 292 (quoting *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022)). In making that determination, a court must "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two, along with other contextual factors such as whether the plaintiff's speech was also conveyed to the public." *Shara*, 46 F.4th at 83. "[S]peech may be 'pursuant to' an employee's official duties when it is 'part-and-parcel of' the employee's concerns about his ability to properly execute his duties." *Id.* (quoting *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010)).

Plaintiff's internal report and complaint about Rosenberg to his superiors was clearly a part of his official duties and "part-and-parcel" of his job as a CSP officer. For one, the TAC explicitly alleges that, if Plaintiff has not filed a complaint to report Rosenberg for his conduct, it would have "violated the CSP's own regulations and complaint policies of the State of Connecticut." TAC ¶ 58. The TAC also acknowledges that Plaintiff made his email complaint to Colonel Mellekas "pursuant to the terms of the collective bargaining agreement in place at the time." *Id.* ¶ 61. In

20

making his complaints about Rosenberg, Plaintiff was thus allegedly following both the CSP's policies and his employment contract for making such a report. *See Barclay v. Michalsky*, 493 F. Supp. 2d 269, 275 (D. Conn. 2007) (holding that plaintiff was not speaking as a citizen when she internally reported misconduct, which she had an "affirmative duty" to do); *see also Paola v. Spada*, No. 03-CV-1628 (WWE), 2007 WL 9706395, at *2 (D. Conn. Dec. 7, 2007) (holding that plaintiff did not state a First Amendment retaliation claim because he "had a duty to file the internal complaint as part of his more general responsibility and the expectations of his job as a state trooper").

Moreover, Plaintiff only reported Rosenberg's misconduct internally. There are no allegations that Plaintiff went to the press to expose Rosenberg's alleged misconduct to the public or that he undertook other efforts to raise the public alarm. *See Barclay*, 493 F. Supp. 2d at 276 ("[I]t is undisputed that plaintiff did not go to the press (at least not before the adverse employment actions complained of in this action), and that all her purported complaints were made privately and internally, rather than publicly. This fact, while not determinative, lends further support to the conclusion that plaintiff acted . . . pursuant to her official duties.").

Accordingly, because the complaints that formed the basis of Plaintiff's First Amendment retaliation claim are not protected speech under the First Amendment, Plaintiff cannot sustain such a claim against any of the State Defendants. The State Defendants' motion to dismiss the First Amendment retaliation claim is GRANTED.

**Leave to Amend**

As to the federal claims asserted against the State Defendants, although Plaintiff does not seek leave to amend those claims in the event they are dismissed, Fed. R. Civ. P. 15(a)(2) instructs that leave to amend should be freely given. The Court may deny leave for good cause, including,

21

*inter alia*, "when amendment would be futile." *Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 252 (D. Conn. 2016) (quotation marks omitted).

The TAC is the *fourth* substantive version of the complaint in this case, and the Court has already given Plaintiff leave to amend his complaint *three times*, *see* ECF Nos. 33, 58, 74. Plaintiff was on notice regarding the State Defendants' arguments each time, and he chose not to address those arguments with further factual support. Plaintiff is also not *pro se*, he is represented by counsel. Accordingly, the Court finds that it is appropriate to deny Plaintiff leave to amend his federal claims against the State Defendants because any such amendment would be futile.

**State Law Claims**

With all the federal claims asserted against the State Defendants dismissed, the Court turns to Plaintiff's remaining state law claims. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim or claims if one of four enumerated circumstances arise. Specifically, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d Cir. 1998). Section 1367(c) is permissive, not mandatory. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). Where any one of the four enumerated bases for declining supplemental jurisdiction is found to apply, as is the case here,[8] the Court may consider a number of factors when deciding whether to decline jurisdiction. *Id.*

That said, "[w]hen all federal claims are dismissed, district courts should generally decline to exercise supplemental jurisdiction over pendent state law claims." *Collins v. Feder*, No. 3:23-CV-71 (KAD), 2024 WL 5058435, at *7 (D. Conn. Dec. 10, 2024). And in any event, both parties

---

[8] The Second Circuit has also held that before a district court can decline to exercise supplemental jurisdiction, one of the four enumerated bases *must* be present. *Shahriar*, 659 F.3d at 245.

in this case agree that if the Court dismisses all of Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  State Defs.' Mem. of Law at 21; Pl.'s State Opp'n at 20.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  Those claims are dismissed without prejudice.

**Conclusion**

As explained above, both motions to dismiss are GRANTED.  The Clerk of Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of March, 2026.


 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

23